UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

FAITH ANDREA MORRISON,

                                       Plaintiff,

v.                                                                             Case # 15-CV-800-FPG

                                                                           DECISION AND ORDER

BUFFALO BOARD OF EDUCATION, *et al.*,

                                       Defendants.


YAMILETTE WILLIAMS,

                                        Plaintiff,

v.                                                                          Case # 15-CV-255-FPG

                                                                         DECISION AND ORDER

BUFFALO BOARD OF EDUCATION, *et al.*,

                                       Defendants.

      In these related breach-of-contract actions, plaintiffs Faith Andrea Morrison and Yamilette Williams allege that they were terminated by the Buffalo City School District on the erroneous ground that they did not maintain the proper certification for their positions. The parties agree on the basic parameters of their dispute. They agree that, under Morrison's and Williams's employment agreements, the contracts would "immediately become null and void" should they fail to maintain "any certifications or qualifications required of [the] position (i.e., qualifications required by the Department of Civil Service or State Education Department)." No. 15-CV-255, ECF No. 76-2 at 10; No. 15-CV-800, ECF No. 10-2 at 10. The parties further agree that the

1

Buffalo Board of Education purported to rely on that provision to terminate Morrison's and Williams's employment. *See* No. 15-CV-255, ECF No. 138-19 at 12; No. 15-CV-800, ECF No. 89-20 at 11-12. It is also undisputed that, at the time of their termination, Morrison and Williams had obtained "School District Leader" "Internship" certificates.[1] No. 15-CV-255, ECF No. 138-19 at 8-9; No. 15-CV-800, ECF No. 89-20 at 8.

However, the parties dispute whether, under the State Education Department's regulations, Morrison's and Williams's "Internship" certificates were sufficient to authorize them to perform the functions of their positions. The School District[2] asserts that an Internship certificate was insufficient, and in both cases, it moves for summary judgment on the ground that it acted within its contractual rights when it terminated the employment agreements. Morrison and Williams oppose summary judgment, arguing that the Internship certificates qualified them to perform their jobs and, therefore, that the School District could not terminate their employment on the supposed lack of certification.

The Education Department's regulations do not provide a ready answer to this dispute. The provision titled "Internship certificate" consists of the following:

> (a) A candidate in a registered or approved graduate program of teacher education, *school leadership* or school counseling which includes an internship experience(s) and who has completed at least one-half of the semester hour requirement for the program may, at the request of the institution, be issued an internship certificate for a fee of $50.
>
> (b) The certificate shall be issued only to those persons enrolled in registered or approved programs that include appropriate supervision.

---

[1] At the time of the relevant events, both plaintiffs were enrolled in a superintendent development program at SUNY Oswego. No. 15-CV-255, ECF No. 136-18 at 34.

[2] Plaintiffs have sued not only the Buffalo City School District and the Buffalo Board of Education, but also various district officials and board members. For ease of reference, the Court refers to Defendants collectively as the "School District."

> (c) The certificate shall be valid for no more than two years from its effective date and is not renewable. For individuals called to active duty in the Armed Forces, the validity period of the internship certificate may be extended for the time of active service and an additional 12 months from the end of such service, provided that the holder is a candidate in a registered or approved graduate program of teacher education, school leadership or school counseling program.

8 N.Y.C.R.R. § 80-5.9 (emphasis added).  Given the emphasized language, the regulation seems to contemplate that one can obtain an Internship certificate for "school leadership" positions, so it would be reasonable to infer that the holder of a "School District Leader" Internship certificate is certified to perform, *to some degree*, the functions of a School District Leader.  Outside of that inference, however, the regulation provides few specifics of what the holder is actually authorized—or not authorized—to do.  The only substantive limitation is that the holder must be enrolled in an approved program that includes "appropriate supervision," a phrase which is itself left undefined.

If the Court were to simply rely on the colloquial understanding of an "internship," it would be difficult to place either plaintiff's job in that category.  As Chief of School Leadership, Morrison was tasked with supervising fifteen schools, evaluating the principals at each school, and "overseeing and supporting all school improvement activities."  No. 15-CV-800, ECF No. 1-1 at 11.  Williams worked as the Chief of Curriculum, Assessment, and Instruction, providing "leadership in all academic affairs, including curriculum, instruction, [and] standards," overseeing "the allocation of materials and staff sources for academic departments," and helping to direct "educational reform and instructional best practices in all aspects of K-12 urban education."  No. 15-CV-255, ECF No. 76-2 at 15.  Both plaintiffs received six-figure salaries.  One would not ordinarily call these jobs "internships" or describe plaintiffs as "interns."  Still, ordinary meaning must yield to the contextual meaning reflected in regulations themselves, and nothing precludes

3

the Education Department from defining an "internship" to encompass full-time supervisory positions.

In order to properly interpret Section 80-5.9, it would be helpful, if not necessary, to know the views of the agency that promulgated the regulations, *i.e.*, the State Education Department. Where, as here, a federal court is interpreting a state regulation without a definitive pronouncement from the New York Court of Appeals, the court's function "is not so much to determine the [provision's] proper meaning as it is to discern the interpretation that the New York Court of Appeals would most likely adopt." *Chrysler Fin. Co. v. Schlant*, 243 B.R. 613, 617 (W.D.N.Y. 2000). As is relevant here, the Court of Appeals subscribes to the practice of "defer[ring] to an administrative agency's rational interpretation of its own regulations in its area of expertise." *Andryeyeva v. N.Y. Health Care, Inc.*, 124 N.E.3d 162, 174 (N.Y. 2019); *see id.* ("[A]n agency's construction of its regulations if not irrational or unreasonable[] should be upheld." (internal quotation marks omitted)).

Unfortunately, the present record contains very little from the State Education Department concerning its formal position on the meaning, purpose, and scope of the Internship certificate and Section 80-5.9. The parties have not proffered the regulatory history of Section 80-5.9 or submitted any formal guidance from the agency which sheds light on how it applies this regulation. Most of the materials the parties do provide—including the opinion of an education professor (No. 15-CV-255, ECF No. 136-20), a school official's interpretation of the regulations (No. 15-CV-255, ECF No. 136-18 at 15), and informal emails with an agency representative (No. 15-CV-255, ECF No. 136-12 at 2)—are not fair substitutes. One of the better indicia of the agency's view is *Appeal of Coughlin*, No. 14,751 (June 26, 2002), a decision from the State Education Commissioner. In that decision is the statement that "an internship certificate is recognized by the

4

State Education Department as a valid credential authorizing the holder to act within the area of service for which the certificate is valid." Nevertheless, while *Coughlin* could be read to support Plaintiffs' position, the factual context in which that statement was made is not fully analogous to the present circumstances. For that reason, the Court is not yet convinced that *Coughlin* settles the issue.

Given the paucity of relevant evidence, the Court is not prepared to make a broad pronouncement on the scope of Section 80-5.9, which is one component of an integrated and complex educational licensing scheme. The Court has the discretion to deny motions for summary judgment without prejudice where "discovery over relevant matters is incomplete." *Toussie v. Allstate Ins. Co.*, 213 F. Supp. 3d 444, 445 (E.D.N.Y. 2016). The interests underlying that rule persuade the Court that, under these circumstances, Defendants' motions for summary judgment should be denied without prejudice. Further development of the record—specifically, to obtain the Education Department's formal views on the purpose and scope of Section 80-5.9—is necessary to resolve Defendants' motions.

The parties have several tools at their disposal to fill in the present gaps. For example, a non-party entity can be required to designate for deposition a witness who can testify to any matters identified in the subpoena. *See Price Waterhouse LLP v. First Am. Corp.*, 182 F.R.D. 56, 61 (S.D.N.Y. 1998) ("A nonparty entity may be subject to a subpoena for deposition testimony in accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure."). The parties could seek to obtain additional documentation from the agency via subpoena. There are also cases standing for the proposition that a district court has the "inherent authority to appoint an amicus *sua sponte* to assist the court in resolution of a pending matter of law." *Denning v. Barbour*, No. 05-CV-771, 2006 WL 8454308, at *2 (S.D. Miss. Mar. 8, 2006) (emphasis added). That could be one way to

5

obtain the Education Department's views on the matter. The Court leaves it to the parties to decide which device(s) they will use to obtain the requisite information, but what is clear is that the summary-judgment record is insufficient to resolve one of the critical issues of these cases.

Accordingly, the Court orders as follows:

1. Defendants' motions for summary judgment (No. 15-CV-255, ECF No. 136; No. 15-CV-800, ECF No. 87) are DENIED WITHOUT PREJUDICE.

2. The parties shall meet and confer to determine how they wish to proceed with obtaining further discovery from and/or the opinion of the State Education Department. As part of said discovery, the parties *shall* obtain the full regulatory history of Section 80-5.9.

3. By April 19, 2021, the parties shall submit a *joint* letter to the Court setting forth (1) their plan for further discovery; (2) a proposed schedule for said discovery; and (3) a proposed deadline for the filing of renewed dispositive motions. The proposed time for further discovery shall not exceed ninety days.

4. The Court will thereafter take the parties' proposal under advisement and issue any necessary orders.

IT IS SO ORDERED.

Dated: April 5, 2021
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court