UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FAITH ANDREA MORRISON,

                        Plaintiff,

v.                                                            Case # 15-CV-800-FPG

                                                                        DECISION AND ORDER

BUFFALO BOARD OF EDUCATION, *et al.*,

                        Defendants.

YAMILETTE WILLIAMS,

                        Plaintiff,

v.                                                          Case # 15-CV-255-FPG

                                                                   DECISION AND ORDER

BUFFALO BOARD OF EDUCATION, *et al.*,

                        Defendants.

## INTRODUCTION

In these related breach of contract actions, Plaintiffs Faith Andrea Morrison and Yamilette Williams allege that they were terminated by the Buffalo City School District on the erroneous ground that they did not maintain the proper certification for their positions.[1] Plaintiffs sue the Buffalo Board of Education, Buffalo Public Schools, the City School District of the City of Buffalo, Pamela Brown (then the Superintendent for the District), Darren Brown (then the Talent Management Director for the District), Sharon Belton (a school board member), Mary Guinn (then

---

[1] Because Plaintiffs and Defendants in both actions are represented by the same counsel, and the issues are substantially the same, the Court addresses both matters in a single Decision & Order.

the deputy Superintendent), Florence Johnson (a school board member), Mary Ruth Kapsiak (a school board member), John Licata (a school board member), Jason M. McCarthy (a school board member), Barbara Seals Nevergold (a school board member), Carl Paladino (a school board member), James M. Sampson (a school board member), and Theresa Harris-Tigg (a school board member).[2] All individual defendants are sued in their official and individual capacities. Currently before the Court are the District's motions for summary judgment in both actions. No. 15-CV-255, ECF No. 145; No. 15-CV-800, ECF No. 96. Plaintiffs oppose the motions. For the reasons that follow, the District's motions are GRANTED.

## BACKGROUND

Plaintiffs applied for their respective positions in advance of the 2013-2014 school year. Morrison initially applied for the position of Deputy Superintendent with the District, but was offered the position of Chief of School Leadership. No. 15-CV-800, ECF No. 103-2 ¶¶ 34, 35. Williams applied for, and was offered, the position of Chief of Curriculum, Assessment & Instruction. No. 15-CV-255, ECF No. 152-1 ¶ 36. Morrison signed her employment agreement in early July 2013, and Williams signed hers in early August 2013. No. 15-CV-800, ECF No. 103-2 ¶ 40; No. 15-CV-255, ECF No. 152-1 ¶ 40. Each agreement was for a two-year term. Generally, Plaintiffs could only be terminated for cause after a hearing before a neutral third-party hearing officer. *See* No. 15-CV-800, ECF No. 10-2 at 8; No. 15-CV-255, ECF No. 76-2 at 8. However, under Paragraph 13 of the employment agreements, Plaintiffs' contracts would "immediately become null and void" should Plaintiffs "fail[] to maintain any certifications or qualifications required of his [sic] position (i.e., qualifications required by the Department of Civil Service or

---

[2] Unless context dictates otherwise, the Court refers to Defendants collectively as "the District."

2

State Education Department)." No. 15-CV-800, ECF No. 10-2 at 10; No. 15-CV-255, ECF No. 76-2 at 10.

All the parties involved in the hiring and contracting process were aware that Plaintiffs did not, at the time of hiring, hold the requisite New York certifications to serve in their positions. *See* No. 15-CV-800, ECF No. 103-2 ¶ 38; No. 15-CV-255, ECF No. 152-7 at 30. Under state law, positions like Plaintiffs'—*i.e.*, those with "responsibilities involving general district-wide administration"—were required to hold a "School District Leader" ("SDL") certificate issued by the state Education Department. 8 N.Y.C.R.R. § 80-3.10(b). This certificate can come in several forms, including a "professional" SDL certificate, a "transitional D" SDL certificate, and an "internship" SDL certificate. *See, e.g., id.* §§ 80-5.9, -5.15. While these certificates all qualify the holder to perform the functions of an SDL, they place different levels of oversight and responsibilities on the employing school district. *See, e.g., id.* § 80-5.15(a)(2)(iii) (stating that, in conjunction with transitional D certificate, the school district must provide mentoring to the employee).

Consistent with the employment agreements, all parties agreed that Plaintiffs' continued employment was contingent upon their obtaining the requisite certification. No. 15-CV-255, ECF No. 152-3 at 27 (deposition of Williams); No. 15-CV-255, ECF No. 146-1 at 2; No. 15-CV-800, ECF No. 103-3 at 26 (deposition of Morrison). Once Plaintiffs were hired, Darren Brown, the District's Talent Management Director, notified Plaintiffs by email that they needed to obtain an SDL certificate to maintain their employment. *See* No. 15-CV-255, ECF No. 146-2 at 2; No. 15-CV-800, ECF No. 97-3 at 2.

Nevertheless, even without those certifications, Plaintiffs began their jobs at the start of the 2013-2014 school year. The parties do not dispute the nature of, and expectations for, their

positions.  At their depositions, Plaintiffs agreed that their jobs were high-level positions in the District.  As the Chief of Curriculum, Williams was expected to "lead the charge" to ensure "excellent instructional practice in every Buffalo Public Schools classroom."[3]  No. 15-CV-255, ECF No. 76-2 at 14.  She would work "closely with other cabinet members and the Superintendent around issues of instructional quality" and would supervise staff members in the District's instructional division.  *Id.*  Williams would "provide direction" in "instructional best practices in all aspects of K-12 urban education," would provide "leadership in all academic affairs," collaborate with other District "divisions and departments to ensure" successful "delivery of instructional programs and services in all schools," would oversee "the allocation of materials and staff resources for academic departments," would serve as a "key spokesperson to the Superintendent[,] school board and the community regarding all instructional issues," would serve as the District's "representative . . . in meetings with governmental, legislative and business community meetings," and would serve as the "primary liaison" to the "Education Department regarding district curriculum matters.  *Id.* at 15.  Williams testified that she led new instructional initiatives, managed federal programs, oversaw instructional staff, and coordinated her activities with those of the Superintendent and other chief district officers.  No. 15-CV-255, ECF No. 152-3 at 18-20.  On occasion, Williams would even "fill in" for the Superintendent when she was unavailable, "attending events or carry[ing] out tasks in her place as a designee."  *Id.* at 21.

As Chief of School Leadership, Morrison would act as a "strategic partner to the Superintendent and other senior leaders," would "oversee a team of professionals," and would

---

[3] Williams's employment agreement incorporates by reference the job posting for Chief of Curriculum.  *See* No. 15-CV-255, ECF No. 76-2 at 3, 13-16.

serve as the District's "primary supervisor of and support provider for approximately 15 schools."[4] No. 15-CV-800, ECF No. 10-1 at 11-12. She would be required to evaluate principals' performance and make tenure recommendations, and would work with school administrators to develop budgets and approve financial plans. *Id.* at 12. Consistent with the original job posting, Morrison testified that she oversaw "all [of] the principals in [her] region"—which amounted to 27 schools—evaluated school administrators, and "filled in" for the Superintendent at certain events and occasions when she was unavailable. No. 15-CV-800, ECF No. 103-3 at 20, 23.

Initially, Plaintiffs applied for the wrong certificate, seeking a "School *Building* Leader" certificate rather than a "School *District* Leader" certificate.[5] In December 2013, the District was notified that Plaintiffs had received "School Building Leader" certificates. The District did not take any corrective action in response at that time.

In March 2014, the District realized that Plaintiffs had not obtained the correct certificates, and the District and Plaintiffs sought to correct the oversight. No. 15-CV-800, ECF No. 97 ¶ 20. Because the Education Department was unwilling to issue Plaintiffs professional SDL certificates, the parties looked into alternative means of certification. The internship SDL certificate appeared to be a viable option, since, at the time, Plaintiffs were both enrolled in an educational program at SUNY Oswego. After discussions between Darren Brown, SUNY Oswego representatives, and the Education Department, Darren Brown directed Plaintiffs to apply for the internship certificate, though he cautioned that the District had pending questions with "the State regarding this

---

[4] Unlike Williams's contract, Morrison's employment agreement does not incorporate the job posting. *See* No. 15-CV-800, ECF No. 10-2 at 3, 13. Despite this potential ambiguity, the parties do not dispute the nature of Morrison's position or duties.

[5] Plaintiffs claim that Darren Brown incorrectly told them to get the School Building Leader certificate, No. 15-CV-255, ECF No. 152-3 at 32; No. 15-CV-800, ECF No. 103-3 at 26, though his emails suggest otherwise. *See* No. 15-CV-255, ECF No. 146-2 at 2; No. 15-CV-800, ECF No. 97-3 at 2.

certificate." No. 15-CV-800, ECF No. 98-2 at 2. On March 30, 2014, Plaintiffs received internship SDL certificates.

Darren Brown avers that, notwithstanding Plaintiffs' acquisition of the internship certificates, "questions remained regarding what specific duties an individual holding an Internship certificate is able to perform and what obligations would be placed upon the District." No. 15-CV-800, ECF No. 97 ¶ 41. Pamela Brown and Darren Brown had conversations with representatives from the Education Department and SUNY Oswego.[6] *Id.* From those conversations, they learned, *inter alia*, that "individuals who hold an Internship certificate . . . have to be supervised in an internship manner by someone higher up."[7] *Id.* ¶ 42. As a result, they believed that the "Internship certificate would not be sufficient to allow [Plaintiffs] to perform the duties associated with [their] position[s]." *Id.* In his declaration, Darren Brown writes:

> Plaintiff[s] reported directly to Dr. Pamela Brown, who, as Superintendent of the second largest school district in New York State, would not have been able to supervise [each] Plaintiff as an intern. The Superintendent oversees approximately 18 cabinet members and cannot review the day-to-day operations of each of those cabinet members. The cabinet members themselves must be able to do that. . . . Plaintiff[s] would have had to make decisions at the executive level, and would be given a lot of leeway on making decisions on [their] own, but with an Internship certificate, [they] would not have been able to do that.

ECF No. 97 ¶¶ 45, 46.

Because the District viewed the internship certificate as insufficient, and because no other certification option appeared to be available, the District took the position that Plaintiffs had failed to obtain the necessary certification, as required by their employment agreements. In early April

---

[6] Plaintiffs argue that the information gleaned from these conversations is inadmissible hearsay. *See* No. 15-CV-255, ECF No. 152-2 at 31. The Court does not consider any such conversations for the truth of the matter asserted but only for their effect on Pamela Brown and Darren Brown. *See United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("[A] statement offered to show its effect on the listener is not hearsay.").

[7] Darren Brown also states that they learned that the holder of an internship certificate cannot "do evaluations of personnel." No. 15-CV-800, ECF No. 97 ¶ 42. The parties dispute whether this is accurate, but it is immaterial to the Court's analysis.

2014, the school board formally voted to terminate Plaintiffs' employment, on the stated ground that they lacked "regular certification as a School District Leader." No. 15-CV-255, ECF No. 76-3 at 7.

Williams brought suit in March 2015, and Morrison in September 2015. In September 2017, the Court dismissed their complaints. The Second Circuit vacated the Court's dismissal of Plaintiffs' breach of contract claims and affirmed the dismissal of their other claims. *See Morrison v. Buffalo Bd. of Educ.*, 741 F. App'x 827 (2d Cir. 2018) (summary order); *Williams v. Buffalo Pub. Schs.*, 758 F. App'x 59 (2d Cir. 2018) (summary order).

The case proceeded through discovery, and the District moved for summary judgment in February 2021. The Court denied the motions without prejudice. It requested that the parties further develop the record concerning the scope of 8 N.Y.C.R.R. § 80-5.9—the regulation permitting internship certificates. The parties have since provided a full regulatory history of Section 80-5.9, and the Education Department has filed a brief as *amicus curiae* concerning the regulation. *See* No. 15-CV-255, ECF No. 162. Now before the Court are the District's renewed motions for summary judgment, in which it requests, *inter alia*, that the Court dismiss the breach of contract claims. *See* No. 15-CV-255, ECF No. 145; No. 15-CV-800, ECF No. 96.

## DISCUSSION

Plaintiffs' claim for breach of contract is premised on two alternative theories: (1) Plaintiffs possessed an adequate SDL certificate at the time of their termination, so the District improperly invoked Paragraph 13 when it discharged them; or (2) the District waived any right to rely on Paragraph 13. On summary judgment, the District challenges both theories. The Court analyzes the viability of each of Plaintiffs' theories below.

7

## I. Whether Plaintiffs Possessed Sufficient Certifications for their Positions at the Time of Termination

"Under New York law, there are four elements to a breach of contract claim: (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011) (internal quotation marks omitted). The parties' central dispute is whether the internship SDL certificate was sufficient to qualify Plaintiffs for their positions. If so, the District could not invoke Paragraph 13, and Plaintiffs' terminations—otherwise without cause—may constitute breaches of the employment agreements. If not, the District permissibly invoked Paragraph 13, and there was no breach of the employment agreements.

At the outset, it is important to emphasize that the issue before the Court is primarily one of contractual intent. The employment agreements define the "duties and responsibilities" of each Plaintiff's "*position*." No. 15-CV-255, ECF No. 76-2 at 3 (emphasis added). The employment agreements go on to require each Plaintiff to "maintain any certifications . . . required of [her] *position*." *Id.* at 10 (emphasis added). Read together, these provisions required Plaintiffs to obtain certifications that would allow them to perform the duties of their positions, as those positions were defined and bargained for under the agreements.

Thus, the issue before the Court is not simply an abstract question of whether an internship certificate is a valid certificate under state law.[8] Instead, the issue is whether the internship SDL certificate qualified Plaintiffs to perform their positions, as those positions were defined under the

---

[8] For present purposes, the Court accepts the proposition—as set forth in the Education Department's *amicus* brief and the State Education Commissioner's decision in *Appeal of Coughlin*, No. 14,751, 2002 WL 34702296 (June 26, 2002)—that an internship SDL certificate is a "valid credential authorizing the holder to act within the area of service for which the certificate is valid." *Coughlin*, 2002 WL 34702296, at *2.

employment agreements. As will be discussed below, because Plaintiffs' internship certificates would have required the District to undertake additional supervisory responsibilities related to Plaintiffs' educational program and outcomes—responsibilities that were not contemplated under the employment agreements—the internship certificates did not qualify Plaintiffs to perform their positions under their contracts. Accordingly, the District was entitled to invoke Paragraph 13, and Plaintiffs' breach of contract claims fail as a matter of law.

The internship certificate is authorized by Section 80-5.9 of the Education Commissioner's regulations. At the time of the relevant events, that provision provided:

> (a) A student in a registered or approved graduate program of teacher education which includes an internship experience(s) and who has completed at least one-half of the semester hour requirement for the program may, at the request of the institution, be issued an internship certificate for a fee of $50.
>
> (b) The certificate shall be issued only to those persons enrolled in registered or approved programs that include appropriate supervision and shall show on the face of the certificate the following information:
>
>> (1) the name of the intern;
>> (2) the collegiate program sponsoring the internship;
>> (3) the area of service for which the certificate is valid;
>> (4) the school district in which the internship is to be served; and
>> (5) the dates for which the certificate is valid.
>
> (c) The certificate shall be valid for no more than two years from its effective date and is not renewable. For individuals called to active duty in the Armed Forces, the validity period of the internship certificate may be extended for the time of active service and an additional 12 months from the end of such service, provided that the holder is a student in a registered or approved graduate program of teacher education.

8 N.Y.C.R.R. § 80-5.9 (2013). As the name implies, an internship certificate is intended to be an experiential component of a student's academic program. *See id.* § 80-1.1(24). One can only receive an internship certificate if one is enrolled in an approved academic program that will provide "appropriate supervision" in connection with the internship. *Id.* § 80-5.9(b). Furthermore,

internships conducted under the certificate must be "carefully selected and planned by program faculty in collaboration with school district leaders, with learning outcomes specified that are connected to program competencies and with the achievement of those competencies regularly evaluated by program faculty." 8 N.Y.C.R.R. § 52.21(c)(3)(v)(a)(2) (2013); *see also* No. 15-CV-255, ECF No. 162 at 18. The internship must be "supervised by certified school district leaders and by program faculty who have preparation and expertise in supervision related to school district leadership." *Id.* § 52.21(c)(3)(v)(a)(3). Assuming these requirements are met, the Internship certificate is an otherwise valid certificate that permits the holder to "perform all of the duties of a School District Leader under New York State law and regulations." No. 15-CV-255, ECF No. 162 at 12-13.

The key takeaway from these regulations is that an internship certificate places more mandatory responsibilities on the employing school district than, say, a professional certificate. The district must collaborate with program faculty to ensure that the student's internship experience achieves specific "learning outcomes," and the student's internship experience must be supervised by "school district leaders . . . who have preparation and expertise in supervision related to school district leadership." 8 N.Y.C.R.R. § 52.21(c)(3)(v)(a)(2), (3); *see also* No. 15-CV-255, ECF No. 162-1 at 5. And, insofar as the program faculty must supervise the student and "regularly evaluate[]" the student's achievement of "those [learning] outcomes," the district is presumably required to stay in routine communication with the student's faculty about the student's work and performance. *Id.* § 52.21(c)(3)(v)(a)(2).

The Declaration of Aaron Baldwin, deputy counsel for the Education Department, supports the Court's interpretation of the Section 80-5.9. He avers that "some supervision from the [district] and the [student's] educator preparation program faculty alike is required [under the internship

10

certificate]." No. 15-CV-255, ECF No. 162-1 at 5 (citing 8 N.Y.C.R.R. § 52.21(c)(3)(v)(a)(3)). He notes that, in this respect, the internship certificate is akin to another alternative certification—the transitional D certificate—under which "mentoring and supervision is . . . likewise required."[9] *Id.* (citing 8 N.Y.C.R.R. § 80-5.15(a)(2)(iii)).

To dispute this conclusion, Plaintiffs proffer the opinion of their expert in "educational administration and supervision," Peter Loehr, Ph.D. No. 15-CV-255, ECF No. 152-5 at 2. He opines that "[s]upervising an [sic] district-level administrator who holds an SDL Internship Certificate is equal to supervising any administrator's performance." *Id.* at 6 (emphasis omitted); *see also* No. 15-CV-800, ECF No. 103-21 at 13 (asserting that only Plaintiffs' program faculty, not the District, would supervise "the interning aspect of [] Plaintiffs' work" (emphasis omitted)). The Court declines to consider Dr. Loehr's opinion on this matter. To the extent Dr. Loehr is simply construing the relevant regulations to arrive at his opinion, *see* No. 15-CV-800, ECF No. 103-21 at 2-3, his opinion is "not a proper subject of expert testimony." *Mason Cap., Ltd. v. Kaman Corp.*, No. 05-CV-1470, 2005 WL 2850083, at *6 n.2 (D. Conn. Oct. 31, 2005) ("The construction of statutes is a judicial task."); *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is inadmissable [sic]."). To the extent Dr. Loehr relies on his experience in "educational leadership" and "superintendent supervising" to arrive at his opinion, No. 15-CV-800, ECF No. 103-21 at 13, his "knowledge, training, and experience in educational administration and supervision" is insufficient to constitute a sufficient basis for his opinion. No. 15-CV-255, ECF No. 152-5 at 2. This is because "an expert basing his opinion solely on experience must do more than aver conclusorily that his experience

---

[9] The Court recognizes that it is relying on Baldwin's declaration for a different point than the one he intends. Baldwin's ultimate point is that, notwithstanding that the District must provide "some supervision," that fact does not render the internship certificate unacceptable or invalid under state law. No. 15-CV-255, ECF No. 162-1 at 5.

led to his opinion." *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 473 n.2 (S.D.N.Y. 2005); *see also* Fed. R. Ev. 702(b)-(d).  In any case, Dr. Loehr's opinion is inconsistent with the plain language of the regulations, which expressly require the employing district to supervise the employee's educational goals and outcomes in connection with the internship.[10]  *See* 8 N.Y.C.R.R. § 52.21(c)(3)(v)(a)(3).  This is a responsibility that is qualitatively different, even if not quantitatively more onerous, than the task of monitoring an administrator's mere work performance.

For these reasons, while an internship SDL certificate is "a valid credential authorizing the holder to act within the area of service," *Coughlin*, 2002 WL 34702296, at *2, it also places additional supervisory responsibilities on the employing school district.  Specifically, the employing district must collaborate with the educational program to design an internship experience with "learning outcomes . . . that are connected to program competencies," and must assign a "certified school district leader[]" to supervise the student-employee's internship experience and learning outcomes.  8 N.Y.C.R.R. § 52.21(c)(3)(v)(a)(2)-(3).

These additional responsibilities are eminently reasonable given that the purpose of the internship certificate is to further the student's education in an approved graduate program.  For present purposes, however, they bear significantly on the viability of Plaintiffs' breach of contract claims.  This is because the additional supervisory responsibilities borne by a school district in connection with an internship certificate are inconsistent with the division of responsibilities to which the parties agreed under Plaintiffs' employment agreements.  There is no evidence that, at the time of contracting or otherwise, the parties agreed that Plaintiffs' positions would enjoy

---

[10] The Court treats Baldwin's Declaration more favorably than Dr. Loehr's opinion because the former represents the views of the Education Department, and New York courts subscribe to the practice of "defer[ring] to an administrative agency's rational interpretation of its own regulations in its area of expertise." *Andryeyeva v. N.Y. Health Care, Inc.*, 124 N.E.3d 162, 174 (N.Y. 2019).

12

supervision, oversight, or mentoring in connection with their internship experiences, or that the Superintendent or the District would collaborate with Plaintiffs' academic program to ensure that Plaintiffs achieved their intended "learning outcomes." 8 N.Y.C.R.R. § 52.21(c)(3)(v)(a)(2). No such arrangement can be inferred from the job postings, the employment agreements, or the parties' initial course of performance. (Indeed, the parties could not have contemplated such responsibilities for the District or Superintendent, since the internship certificate was not even raised as a possibility until March 2014.)

Rather, the parties contemplated that Plaintiffs' positions would be "high-level" ones involving a significant degree of autonomy, independence, and discretion. No. 15-CV-800, ECF No. 103-3 at 22. Plaintiffs would work without significant direct supervision from the Superintendent; at times, they even acted as the Superintendent's designee. The employment agreements expressly provided that Plaintiffs would report directly to the Superintendent or her designee but that any "reporting requirements" could be changed by the Superintendent "in his/her *sole discretion*." No. 15-CV-255, ECF No. 76-2 at 3 (emphasis added); *see also* No. 15-CV-800, ECF No. 10-2 at 3. This grant of discretionary authority with respect to the nature and extent of supervision is inconsistent with the kind of mandatory supervision that the District would need to undertake in connection with the internship certificate. Plaintiffs cite no contrary evidence to show that, under the employment agreements, the parties agreed that Plaintiffs' positions would be entitled to the sort of supervisory arrangement that is required for an internship certificate to be acceptable under state law.

Accordingly, once Pamela Brown and Darren Brown learned of the additional responsibilities attendant to an internship certificate—*i.e.*, that "someone higher up" would need to supervise each Plaintiff "as an intern," No. 15-CV-800, ECF No. 97 ¶¶ 42, 45—they correctly

13

concluded that the internship certificates would not allow Plaintiffs to fulfill the duties of their positions as defined by the contracts, but would instead foist additional, mandatory supervisory responsibilities on the District and/or the Superintendent that the parties had not bargained for under the employment agreements.  Under the circumstances, the school board properly invoked Paragraph 13 and terminated Plaintiffs' employment.

This is not to say that the District was *precluded* from accepting Plaintiffs' internship certificates.  An internship SDL certificate allows the holder to work in the area of service, and a school district may accept it if it is willing to provide the necessary supervision and mentoring required under the regulations.  But Plaintiffs cite no evidence to suggest that, under the employment agreements as executed, the District and/or the Superintendent agreed to provide such supervision and mentoring.  Nor do Plaintiffs marshal any evidence, or cite any provision of state law, to demonstrate that the District was obligated to modify Plaintiffs' positions so as to accommodate their internship certificates.  To the contrary, under the employment agreements, it was incumbent upon Plaintiffs, not the District, to maintain the correct certifications for their positions.  Just as the District was under no obligation to "affirmatively [] assist" Plaintiffs in "obtaining the proper certification," it was under no obligation to redesign the duties of Plaintiffs' positions or provide the necessary supervision so as to accommodate Plaintiffs' internship certificates.[11]  *Morrison*, 741 F. App'x at 831.

In short, because the internship certificate would not allow Plaintiffs to perform their positions (as those positions were defined by and contemplated under the employment agreements), the internship certificate was not an adequate certification "required of [each

---

[11] The fact that, as the Education Department asserts, the District was "fully capable of providing the requisite supervision," is thus immaterial.  No. 15-CV-255, ECF No. 162 at 19.

Plaintiff's] position," and the school board was entitled to invoke Paragraph 13 to terminate their employment.  No. 15-CV-800, ECF No. 10-2 at 10.

## II.   Whether the District Waived its Right to Invoke Paragraph 13

In the alternative, Plaintiffs argue that, through the conduct of various officials, the District waived its right to invoke Paragraph 13.  *See* No. 15-CV-255, ECF No. 152-2 at 22-23.  The Court is not persuaded.

Paragraph 18 of the parties' employment agreements contains a "no-waiver" clause: "Failure of either party hereto to insist upon strict compliance with any provision of the Agreement shall not be construed to be a waiver thereof."  No. 15-CV-800, ECF No. 10-2 at 10.  Such clauses are "uniformly enforced" under New York law.  *Awards.com, LLC v. Kinko's, Inc.*, 42 A.D.3d 178, 188 (1st Dep't 2007).  To be sure, "the mere existence of such a [clause] does not preclude waiver of a contract clause," and where the non-breaching party "continues to perform or accept performance after breach, it loses [the] right to terminate [the] contract based on the prior breach," notwithstanding a "no-waiver clause."  *Morrison*, 741 F. App'x at 830 (internal quotation marks omitted).  Even then, however, the non-breaching party "retains [the] option to terminate based on [any] *subsequent* breach."  *Id.* (emphasis added).

In this case, Plaintiffs may reasonably argue that the District could not terminate their employment solely due to their initial failure to maintain the proper certificates at "the time of appointment."  *Id.*  This is because the District hired Plaintiffs with the knowledge that they did not possess the necessary certification, and it nonetheless continued to perform under the agreements and to accept Plaintiffs' performance.  *See Awards.com*, 42 A.D.3d at 188 ("When a party materially breaches a contract, the non-breaching party must choose between two remedies: it can elect to terminate the contract or continue it.  If it chooses the latter course, it loses its right

to terminate the contract because of the default."); *see also Morrison*, 741 F. App'x at 830; *Williams*, 758 F. App'x at 63.

However, the District's choice to take no action at the time of Plaintiffs' appointment did not necessarily bar it from terminating Plaintiffs' employment in April 2014, when Plaintiffs still remained without the proper certification "required of [their] position[s]." No. 15-CV-255, ECF No. 61-1 at 10. In light of the agreements' no-waiver clause, the District "retain[ed] the option of terminating the [agreements] for [such] subsequent breaches," *Awards.com*, 42 A.D.3d at 188, and the record unequivocally establishes that all of the parties understood that, despite their initial appointment without the necessary certification, Plaintiffs would need to obtain and maintain the necessary certification during the 2013-2014 school year. *See* No. 15-CV-255, ECF No. 152-3 at 27 (deposition of Yamilette Williams) ("I knew that I was going to need to get [New York State certification] as a part of being hired."); No. 15-CV-800, ECF No. 103-3 at 26 (deposition of Faith Andrea Morrison) (agreeing with the statement that "when you accepted the position, you did know that you would be required to obtain a certificate"). The only evidence that Plaintiffs cite to argue that the District waived its rights under Paragraph 13 *in perpetuity*—as opposed to merely at the time of appointment—pertain to the District's initial choice to retain Plaintiffs despite their lack of certification.[12] *See* No. 15-CV-800, ECF No. 103-1 at 22-23. But under New York law, "to raise an issue of fact as to waiver [where there is a contractual no-waiver clause], it is not sufficient . . . merely to point to a past election . . . not to terminate [the contract]." *Awards.com*, 42 A.D.3d at 188. Plaintiffs must instead show that the District "knowingly and intentionally

---

[12] Among other things, Plaintiffs claim that the school board "voted to ratify [Plaintiffs'] contract[s] while [they] may have been in technical breach." No. 15-CV-800, ECF No. 103-1 at 23. Plaintiffs cite only their unsworn complaints for this claim. *See id.*; ECF No. 15-CV-255, ECF No. 152-2 at 23. The Court may not consider those allegations on summary judgment. *See Welch-Rubin v. Sandals Corp.*, No. 03-CV-481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) ("A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading." (internal quotation marks omitted)).

16

agreed to waive" its rights under Paragraph 13 in perpetuity. Plaintiffs present no such evidence. Accordingly, Plaintiffs' claim of waiver fails.[13]

## CONCLUSION

For these reasons, the District's motions for summary judgment (No. 15-CV-255, ECF No. 145; No. 15-CV-800, ECF No. 96) are GRANTED. The Clerk of Court is directed to enter judgment in favor of Defendants and close the case.

IT IS SO ORDERED.

Dated: September 29, 2022
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

---

[13] In passing, Plaintiffs contend that the District failed to give them sufficient "notice of withdrawal of [its] waiver and a reasonable time to cure the [] breach." No. 15-CV-800, ECF No. 103-1 at 24. This argument is too undeveloped to merit consideration. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). The record suggests that Plaintiffs had at least two weeks of notice that the school board intended to terminate their employment for lack of certification, and during that time, Plaintiffs worked with Darren Brown, SUNY Oswego, and the Education Department to obtain adequate certification. *See, e.g.*, No. 15-CV-255, ECF Nos. 146-5 at 2-3, 146-6 at 3. Plaintiffs were, in fact, able to obtain an SDL certificate during that period, though it was ultimately an insufficient one. Plaintiffs fail to articulate why that time period was insufficient, and they do not assert that they could have obtained the proper certification if they had received earlier notice.